**No. 14-_____**

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

MATTHEW EDWARDS, ET AL.,

*Plaintiffs-Respondents,*

v.

NATIONAL MILK PRODUCERS FEDERATION, A/K/A COOPERATIVES WORKING
TOGETHER, ET AL.,

*Defendants-Petitioners.*

_____

Petition to Appeal from the United States District Court
for the Northern District of California
Civil Action No. C 11-04766 JSW
Honorable Jeffrey S. White, Presiding

_____

**PETITION FOR PERMISSION TO APPEAL FROM ORDER GRANTING
CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(f) AND FRAP 5**

_____

<table>
<tr><td><b>BAKER &amp; MILLER, PLLC</b><br>W. TODD MILLER<br>2401 Pennsylvania Ave., N.W.<br>Washington, DC 20037<br>(202) 663-7820</td><td><b>WILLIAMS &amp; CONNOLLY LLP</b><br>STEVEN R. KUNEY<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005<br>(202) 434-5000</td></tr>
</table>

*Counsel for Defendant-Petitioner Dairy Farmers of America, Inc.*

[Additional Counsel and Parties Listed on Following Page]

JESSE W. MARKHAM
ATTORNEY AT LAW
2130 Fulton Street
San Francisco, CA 94117
(415) 422-4473

*Additional Counsel for Defendant-
Petitioner Dairy Farmers of America, Inc.*

**SHIPMAN & GOODWIN, LLP**
JILL M. O'TOOLE
One Constitution Plaza
Hartford, CT 06103
(860) 251-5000

*Counsel for Defendant-Petitioner
Agri-Mark, Inc.*

**FARMER BROWNSTEIN JAEGER LLP**
WILLIAM S. FARMER
235 Pine Street, Suite 1300
San Francisco, CA 94014
(415) 962-2875

*Counsel for Defendant-Petitioner
Dairylea Cooperative, Inc.*

**EIMER STAHL LLP**
NATHAN P. EIMER
224 South Michigan Avenue,
Suite 1100
Chicago, IL 60604
(312) 660-7600

**STEPTOE & JOHNSON, LLP**
ANDREW J. LEE
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

*Counsel for Defendant-Petitioner
National Milk Producers Federation,
a/k/a Cooperatives Working Together*

**GIBSON, DUNN & CRUTCHER LLP**
GEORGE A. NICOUD III
555 Mission Street, Suite 3000
San Francisco, CA 94105-2933
(415) 393-8200

*Counsel for Defendant-Petitioner
Land O'Lakes, Inc.*

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1:

Petitioner National Milk Producers Federation a/k/a Cooperatives Working Together hereby states that it has no parent corporation and that there is no publicly held company that owns 10% or more of its stock.

Petitioner Dairy Farmers of America, Inc. ("DFA"), hereby states that it has no parent corporation and that there is no publicly held company that owns 10% or more of its stock. DFA further states that Defendant-Petitioner Dairylea Cooperative Inc. ("Dairylea") was an agricultural cooperative that had no corporate parent and no capital stock. Dairylea merged with DFA on April 1, 2014, with DFA as the surviving entity.

Petitioner Agri-Mark, Inc. hereby states that it has no parent corporation, and that there is no publicly held company that owns 10% or more of its stock.

Petitioner Land O'Lakes, Inc. hereby states that it has no parent corporation, and there is no publicly held company that owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS ........................................................ i

TABLE OF AUTHORITIES ................................................................................ iv

I.     INTRODUCTION AND RELIEF SOUGHT ................................................. 1

II.    QUESTION PRESENTED ............................................................................ 4

III.   STATEMENT OF THE FACTS .................................................................. 4

       A.     The CWT Herd Retirement Program. ................................................ 4

       B.     Plaintiffs' Allegations ....................................................................... 5

       C.     The Class Certification Motion and Decision. ................................... 6

IV.    STANDARD OF REVIEW ......................................................................... 8

V.     REASONS FOR GRANTING INTERLOCUTORY REVIEW .................... 9

       A.     The District Court Failed to Conduct the Required Rigorous
              Analysis of Plaintiffs' Proffered Common Proof of Antitrust
              Impact and Damages. ......................................................................... 9

              1.     The District Court Manifestly Erred in Admitting Dr.
                     Connor's Opinion on Common Proof of an
                     Overcharge. .............................................................................10

              2.     The District Court Failed To Analyze Whether
                     Plaintiffs' Proof of Impact and Damages Was
                     Sufficient to Meet Plaintiffs' Burden Under Rule 23. ..............15

       B.     The District Court Failed to Provide Any Analysis, Rigorous
              or Otherwise, of the Issue of Pass-Through. .....................................16

       C.     Review Should Be Granted to Address an Unresolved Issue
              of Class Action Procedure That Divides Courts in this
              Circuit. ..............................................................................................19

CONCLUSION ..................................................................................................20

CERTIFICATE OF SERVICE ..........................................................................23

APPENDIX:  Order Granting Motion for Class Certification (Sept. 16, 2014) … 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aburto v. Verizon California, Inc.*, No. CV 11-03683-ODW, 2012 WL 10381 (C.D. Cal. Jan. 3, 2012) .............................................................. 16

*Bazemore v. Friday*, 478 U.S. 385 (1986) .............................................. 11

*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035 (8th Cir. 1999) ................................................................... 11, 12, 13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ...................... 14

*Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782 (11th Cir. 2014) .................................................................... 10, 19

*Carlin v. DairyAmerica, Inc.*, 705 F.3d 856 (9th Cir. 2013) .................................. 5, 6

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005) ........................ 3, 8, 9

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ............................................. 2, 14

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) .... 1, 2, 9, 16, 19

*EQT Production Co. v. Adair*, __ F.3d __, 2014 WL 4070457 (4th Cir. Aug. 19, 2014) .................................................................. 10

*In re Alum. Phosphide Antitrust Litig.*, 893 F.Supp. 1497 (D. Kan. 1995) ............................................................................... 12

*In re Autozone, Inc. Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526 (N.D. Cal. 2012) ............................................................ 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) .................................... 20

*In re Flash Memory Antitrust Litigation*, No. C 07-0086-SBA, 2011 WL 1301527 (N.D. Cal. Mar. 31, 2011) ........................................... 16

*In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478 (N.D. Cal. 2008) ............................................................... 17

*In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966 (C.D. Cal. 2012) .................................................................................12, 13

*In re Methionine Antitrust Litig.,* 204 F.R.D. 161 (N.D. Cal. 2001) ......................17

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6 (1st Cir. 2008) .......................................................................18

*In re OSB Antitrust Litig.,* No. 06-826, 2007 WL 2253425 (E.D. Pa. Aug. 30, 2007) .........................................................................17

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013) .................................................................................19

*Package Shop, Inc. v. Anheuser-Busch, Inc.*, 675 F. Supp. 894 (D. N.J. 1987) ........................................................................................12

*Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2012 WL 3116355 (N.D. Cal. July 31, 2012) ...........................................20

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618 (6th Cir. 2011) .................................................10

*Stein v. Pac. Bell*, No. C 00-2915, 2007 WL 831750 (N.D. Cal. Mar. 19, 2007) ........................................................................12

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................2, 9, 18

## OTHER AUTHORITIES

Federal Judicial Center, *Reference Manual on Scientific Evidence* 313 (3d Ed. 2011) .....................................................................12

H. Hovenkamp, *Federal Antitrust Policy* 661-62 (2d Ed. 1999) ...........................12

Fed. R. Civ. P. 23 ............................................................................*passim*

Fed. R. Evid. 702 ........................................................................................10

## I.      INTRODUCTION AND RELIEF SOUGHT

In a case involving a well-publicized, almost decade-long program to aid farmers in shifting their cattle herds from raw milk production to beef production, the District Court's class certification decision commits the very error that led to this Court's reversal of class certification in *Ellis v. Costco Wholesale Corp.*:

> [T]he district court seems to have confused the *Daubert* standard it correctly applied . . . with the "rigorous analysis" standard to be applied when analyzing commonality.    Instead of judging the persuasiveness of the evidence presented, the district court seemed to end its analysis of the plaintiffs' evidence after determining such evidence was merely admissible.    For example, the district court stated that . . . [certain] "arguments attack the weight of the evidence and not its admissibility."    Therefore, to the extent the district court limited its analysis of whether there was commonality to a determination of whether Plaintiffs' evidence on that point was admissible, it did so in error.

657 F.3d 970, 982 (9th Cir. 2011).  As in *Ellis*, the District Court here found that Plaintiffs' expert's testimony was admissible on the subject of whether there was an overcharge for raw milk at the farm level (a determination that, as explained below, was itself manifest error), and then ended its analysis, dismissing Defendants' arguments and evidence as merely "go[ing] to the weight of the evidence, as opposed to admissibility." Order, at 11.  The District Court's refusal to rigorously analyze the persuasiveness of Plaintiffs' evidence, in the face of the conflicting fact and expert evidence in the record, before certifying 15 statewide classes claiming up to $4 billion in damages, was manifest error.

The failure to evaluate Plaintiffs' proffered common proof of a farm level overcharge under the applicable legal standard is just one of the ways in which the District Court failed to conduct the "rigorous analysis" that this Court and the Supreme Court have declared to be essential to class certification. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Ellis*, 657 F.3d at 982. First, the District Court ignored a unanimous body of case law finding analyses of impact and damages that fail to consider causal factors other than the Defendants' alleged conduct to be unreliable. Second, the District Court disregarded entirely the issue of whether Plaintiffs (retail consumers) could demonstrate with common proof that changes in premiums charged for raw milk at the farm level were passed down the distribution chain and affected retail prices. Despite uncontroverted evidence that retail prices vary even within cities because grocery store pricing strategies for these products are driven by a variety of store- and market-specific factors unrelated to small changes in product costs, the District Court's Order provides no analysis whatsoever of the pass-through issue. Indirect purchaser plaintiffs, including the Plaintiffs here, cannot succeed without demonstrating pass-through using common evidence, so no "rigorous analysis" can simply ignore that issue. Likewise, the District Court did not explain what analysis supported its decision to certify classes for certain states (including California) and certain products (yogurt, cottage

cheese, sour cream, etc.) for which Plaintiffs lacked the data to demonstrate the feasibility of their proposed method of common proof.

The bar to certification of antitrust class actions cannot be this low. Had the District Court conducted the rigorous analysis required by this Court's precedents, it would have found that Plaintiffs' evidence is both unreliable and insufficient to show that impact or damages can be measured on a class-wide basis with common proof, and that the multitude of significant individual issues precludes certification.

The certified classes here consist of millions of retail consumers suing non-profit dairy cooperatives for potentially billions of dollars that were long ago distributed to the dairy farmers who own these cooperatives. The magnitude of the classes' claims (by their estimate, up to $4 billion after trebling) creates a death knell situation, making the need for interlocutory review particularly acute. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959-60 (9th Cir. 2005).

Review should also be granted to address an important issue of class action procedure that has split the district courts in this Circuit since *Ellis*, namely, whether a party seeking the exclusion of an expert at the class certification stage has the right to pursue that remedy by filing a separate motion. Under the procedure mandated by the District Court (contrary to the practice of other district courts), the party seeking *Daubert* exclusion must include its arguments in its opposition to class certification, converting Plaintiffs' reply brief on class

certification into a *Daubert* response brief to which there is no right of reply. This Court should provide badly needed guidance on the propriety of that anomalous procedure, particularly for cases such as this one in which the District Court rules on the *Daubert* and class certification issues without a hearing.

## II. QUESTION PRESENTED

Should this Court grant interlocutory review because (1) the District Court manifestly erred in failing to conduct a rigorous analysis of the class certification record, including Plaintiffs' assertions that common proof may be used to prove an overcharge for farm milk and pass-through to retail consumers; (2) the certification of classes seeking up to $4 billion in damages creates the type of "death knell" situation for which interlocutory review is most appropriate; and (3) an unresolved issue of class action procedure has split the courts in this Circuit?

## III. STATEMENT OF THE FACTS

### A. The CWT Herd Retirement Program.

This suit concerns the Herd Retirement Program of Cooperatives Working Together ("CWT"), which was administered between 2003 and 2010 by Defendant-Petitioner National Milk Producers Federation ("NMPF"). CWT was a voluntary, publicly announced program started by and for dairy farmers as a way to lawfully strengthen and stabilize raw milk prices pursuant to the Capper-Volstead Act, 7 U.S.C. §§ 291-92, and similar state laws.

4

To administer CWT, NMPF raised funds from participating cooperatives, and periodically used those funds to provide a subsidy to dairy farmers who chose, because of profitability, age or other considerations, to convert their herds from milk production to beef production by selling them to slaughterhouses. *See* Kaplan Expert Rpt. ¶¶ 22-27, filed in *Edwards v. NMPF*, No. 4:11-cv-04766-JSW (N.D. Cal.), at Docket ("Dkt.") # 274-2. Only a limited number of farmers participated in each round of retirements. *Id.* The cooperatives involved in the program agreed not to cap the amount of milk all other farmers could produce, and nationwide milk production actually increased over the duration of the program. *Id.* at ¶ 29. The CWT program was operated with complete transparency; information about its operation was posted on a website maintained by NMPF, and representatives testified about it before Congress, the USDA, and state regulators.

### B. Plaintiffs' Allegations.

Plaintiffs, retail consumers of dairy products, filed suit in September 2011 alleging that the CWT program constituted a *per se* illegal horizontal output restraint. Plaintiffs claim that the program raised milk prices nationwide, and seek recovery on behalf of retail consumers of milk, cream, half & half, yogurt, cottage cheese, cream cheese and sour cream in fifteen states and the District of Columbia.

As this Court explained in *Carlin v. DairyAmerica, Inc.*, 705 F.3d 856 (9th Cir. 2013), milk prices are highly regulated, and in most parts of the country there

is a minimum price for milk set directly by federal or state regulators. *Id.* at 858-63. Because the filed-rate doctrine prohibits the recovery of damages based on changes in the regulated price of milk, *id.* at 873, Plaintiffs' claims are limited to recovery for the effect, if any, the CWT program had upon privately-negotiated premiums above the minimum price.[1]

### C. The Class Certification Motion and Decision.

In their motion for class certification, Plaintiffs relied upon the opinion of Dr. John Connor that the CWT program caused an overcharge for raw milk at the farm level that could be reliably traced, using common proof, to retail consumers. Dr. Connor used a single cooperative's data to construct an average, national premium. *See* Connor Expert Rpt. ¶¶ 79-83 (Dkt. # 203). He measured the increase in that average after 2003, when the program began, made some allowance for inflation, and then labeled his entire calculated increase an illegal "overcharge" caused by the CWT program. *Id.* at ¶¶ 84-86. Dr. Connor also opined that the rate at which that "overcharge" had been passed through to retail consumers could be shown with common proof—though, he never analyzed the pass through of premiums, and his analysis of total milk prices showed that pass-through rates varied significantly from city to city. *Id.* at ¶¶ 115-16 & Exhibit K.

---

[1] The regulated minimum prices constitute as much as 90% of the total price for raw milk sold by farmers to processors and manufacturers. Kaplan Rpt. ¶ 84.

He estimated damages to the classes of between $806 million and $1.333 billion, before trebling. *Id.* at ¶ 123.[2]

Defendants opposed the motion and separately moved to exclude Dr. Connor's opinions under *Daubert*. Dkt. # 210, 212. Through sworn declarations, Defendants established that the data Dr. Connor used to estimate his national average premium level is applicable only to Class I fluid milk, even though six of the seven products at issue in the case are Class II dairy products, which have a different (and generally more static) pricing structure. Dkt. # 210-2 (Wilson) ¶ 20; 210-6 (Lichte) ¶ 12. Defendants also established that factors independent of the CWT program had influenced premiums in the years after 2003, including a shift in consumer demand for milk produced without synthetic growth hormones that resulted in new, additional premiums, and rising diesel prices that led to fuel surcharges that enhanced premiums. *See* Wilson ¶¶ 12-18; Dkt. # 210-3 (Mathur) ¶¶ 12-13; # 210-4 (Wegner) ¶¶ 13; # 274-1 (Stammer) ¶¶ 12-15. The undisputed evidence also showed that premiums vary from customer to customer based upon the level of services demanded by the customer. Mathur ¶ 5; Stammer ¶¶ 7-9. Manufacturers that demand irregular volumes of milk each day are more costly to

---

[2] This figure comes from Dr. Connor's initial estimates. In a later report he modified his approach to use state-wide average premiums instead of a national average, but he did not present a revised total for all of the classes. *See* Connor Supp. Rpt. ¶¶ 10-21 (Dkt. # 270). He provided no reason to believe that this change portends a significantly lower damages claim than his original estimate.

serve, and pay higher premiums than plants that accept milk uniformly. Wilson ¶¶ 9-11. Finally, Defendants submitted reports from two experts who analyzed retail pricing data and demonstrated significant variation from store to store, and from product to product, belying any claim of a common pass-through rate for any one product, much less for all of them. Kaplan Expert Rpt. ¶¶ 90-102 (Dkt. # 274-2); Hanssens Expert Rpt. ¶¶ 8-53 (Dkt. # 274-3).

On May 28, 2014, the District Court ordered further briefing on a limited issue relating to Plaintiffs' ability to separate in Dr. Connor's analysis the effects of conduct in states that had been dropped from the case. Dkt. # 239. On September 16, 2014, three days before the scheduled hearing, the District Court entered an Order granting Plaintiffs' motion to certify the classes, except as to West Virginia, for which there was no representative plaintiff. Order, at 13. The Court struck Defendants' separate *Daubert* motion and reply. *Id.* at 1 n.1.

## IV. STANDARD OF REVIEW

Interlocutory review of a class certification decision is appropriate when: (1) a party is facing a death-knell situation independent of the merits of the claim; (2) the petition presents an unsettled question of law important to class action practice; or (3) the certification order is manifestly erroneous. *Chamberlan*, 402 F.3d at 959. "We view interlocutory review as warranted when the district court's decision is manifestly erroneous—even absent a showing of another factor." *Id.*

"The error in the district court's decision must be significant . . . [and] must be truly 'manifest,' meaning easily ascertainable from the petition itself." *Id.*

## V.    REASONS FOR GRANTING INTERLOCUTORY REVIEW

Review should be granted to correct manifest errors in the District Court's certification order, and to resolve an important question of class action practice that has split courts in this Circuit. Interlocutory review is also needed because the certification of claims totaling, by Plaintiffs' estimate, up to $4 billion after trebling creates a death-knell situation that may defeat end-of-case review.

### A.    The District Court Failed to Conduct the Required Rigorous Analysis of Plaintiffs' Proffered Common Proof of Antitrust Impact and Damages.

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]−that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.," because "actual, not presumed conformance" with Rule 23 is "indispensable." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551. In determining whether the party seeking certification has met this burden, the district court "*must* perform a rigorous analysis" to ensure that Rule 23's requirements have been satisfied. *Ellis*, 657 F.3d at 980 (emphasis added) (internal quotation marks omitted). This rigorous analysis entails a searching inquiry of the full record and resolution of disputed issues of fact as the circumstances require. *Id.* at 984.

Moreover, the district court's obligation in this regard is not satisfied by the unexplained assurance that its analysis was "rigorous;" the court must conduct and explain its analysis in a manner that enables an appellate court to conduct a meaningful review. *See EQT Production Co. v. Adair*, __ F.3d __, 2014 WL 4070457, at *17 (4th Cir. Aug. 19, 2014) (vacating where the district court "failed to discuss [certain] evidence entirely" and its "analysis lacked the requisite rigor to ensure the requirements of Rule 23 were satisfied"); *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011) (finding an "absence of analysis by the district court in this case resulted in reversible error" and explaining that the trial court must give "serious consideration" to Rule 23, not merely "mimic[] the language of the rule"); *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 790 (11th Cir. 2014) ("[t]he district court acknowledged the *Comcast* decision, but it nonetheless failed to conduct the 'rigorous analysis' required by that decision . . ."). The District Court here failed to conduct and explain the requisite rigorous analysis.

###### 1. The District Court Manifestly Erred in Admitting Dr. Connor's Opinion on Common Proof of an Overcharge.

The District Court abused its discretion and committed manifest error in finding Plaintiffs' proffered expert proof of impact and damages admissible under *Daubert* and Rule 702. In order to show an illegal increase in the prices charged by dairy farmers to milk processors, Plaintiffs' expert did nothing more than take

data from a single cooperative, for a single category of milk prices, make some adjustment for inflation, and then offer the opinion that any difference in average premiums before and after 2003 (the year the CWT program began) was "damage" caused by the program. Connor Rpt. ¶¶ 83-86 (Dkt. # 203). By his own admission, Dr. Connor did not include in his method a single other factor (economic, practical, or otherwise) that could have affected premiums during the same time period. *See* Dkt. # 207 (Connor Dep.) at 148:16 - 150:9. Far from controlling for the "*major factors*" so as to make an argument over the absence of other variables one of weight rather than admissibility, *see Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (cited in Order, at 10 (emphasis added)), he deemed *no* causal factors worthy of inclusion apart from inflation.[3] If that does not qualify as statistical analysis that is "so incomplete as to be inadmissible as irrelevant," *id.* at 400 n.10, then it is hard to understand what would.

The District Court's conclusion that a before-and-after analysis is admissible, even if it does not control for any causal factors is, to Petitioners' knowledge, contrary to the conclusion reached by every previous court that considered the same issue. For example, in *Blue Dane Simmental Corp. v. Am.*

---

[3] Dr. Connor did not truly control for inflation because he first compared average premiums before and after 2003 in nominal terms, and only then applied an inflation adjustment to reduce the size of the calculated difference. As he later conceded, that misstep meant he would find "damages" *even if premiums grew at a rate less than the rate of inflation*. *See* Dkt. # 255-2 (2nd Connor Dep.) at 43:21 - 47:20. The District Court did not address this failing in Dr. Connor's methodology.

*Simmental Ass'n*, the Eighth Circuit reviewed the opinions of an expert who used a before-and-after model to opine that the defendants had diminished the value of beef cattle. 178 F.3d 1035, 1040 (8th Cir. 1999). But the expert "neglected to consider any variables other than" the Defendants' alleged conduct, and because there was no evidence that "economists use before-and-after modeling to support conclusions of causes of market fluctuation," the court affirmed his exclusion. *Id.* at 1040-41. Numerous other courts within this Circuit and elsewhere have reached the same conclusion.[4] So too have academics, including a treatise that Plaintiffs relied upon in the District Court.[5]

---

[4] *See In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 978 (C.D. Cal. 2012) (rejecting a "before and after" model that controlled for inflation but nothing else, concluding that such an approach amounted to an assumption that the challenged conduct was the cause of all real changes in price"); *Stein v. Pac. Bell*, No. C 00-2915, 2007 WL 831750, *12 (N.D. Cal. Mar. 19, 2007) (before and after comparison of DSL prices did not "account for [any] variables in the marketplace" and thus did not support claims of uncompetitive pricing); *In re Alum. Phosphide Antitrust Litig.*, 893 F.Supp. 1497, 1504 (D. Kan. 1995) (excluding before-and-after model that failed to control for causal factors); *Package Shop, Inc. v. Anheuser-Busch, Inc.*, 675 F. Supp. 894, 950 n.27 (D. N.J. 1987) (before-and-after model excluded because it "made no attempt . . . to control for variables . . . which might have contributed to decline in wholesale prices").

[5] *See* H. Hovenkamp, *Federal Antitrust Policy* 661-62 (2d Ed. 1999) ("[M]arkets change greatly through time, and the before-and-after model must be adjusted to account for these changes. *This problem cannot be solved by the simple device of discounting all dollars to the same value to account for inflation or the Consumer Price Index*.") (emphasis added) (Dkt. # 228-1 at 14); Federal Judicial Center, *Reference Manual on Scientific Evidence* 313 (3d Ed. 2011) ("An attempt should be made to identify additional known or hypothesized explanatory variables . . .").

In this case, there are substantial economic factors that should have been accounted for as part of any reliable before-and-after methodology:

- **Rising Premiums Before 2003.** Dr. Connor's own analyses show that in the years leading up to the CWT program, premiums had risen for reasons that he cannot explain. Kaplan Rpt. ¶¶ 71-72 (Dkt. # 274-2). Such a trend is relevant because if prices could rise before 2003 as a result of independent economic factors, then they could rise for similarly independent reasons after the CWT program began, and an upward trend over time will guarantee that a before-and-after approach shows "damage." The failure to control for such a trend was cited in *Blue Dane Simmental*, 178 F.3d at 1040, and *Live Concert Antitrust Litig.*, 863 F. Supp. 2d at 978, as the key to the experts' exclusions in those cases.

- **Macroeconomic Shocks.** Although the CWT program operated from 2003 to 2010, much of the premium growth observed by Dr. Connor occurred in a single stroke in 2008. Dkt. # 210-7 (Connor Dep.) at 133:20−134:6. When asked to explain that anomaly, Dr. Connor noted that the increase coincided with a "worldwide increase in commodity prices of all kinds" which "affected the dairy sector as well." *Id.* at 134:9-137:14.

- **Consumer Preferences.** During the class period, consumer demand shifted towards milk produced without the use of a synthetic growth hormone known as rBST. Because foregoing the use of rBST was costly to dairy farmers

and valuable to consumers, the shift resulted in the introduction of substantial new premiums. Kaplan Rpt. ¶ 42 (Dkt. # 274-2); Wilson ¶¶ 12-17. Dr. Connor agrees these facts are "undeniable." Connor Rbtl. ¶ 20 (Dkt. # 268).

- **Fuel Surcharges.** It is also undisputed that throughout the class period, diesel fuel prices increased significantly, thereby raising the already substantial cost of hauling farmers' milk to market. To offset those costs, many coops implemented "fuel surcharges" that raised premiums commensurate with increases in transportation expenses. Kaplan Rpt. ¶¶ 41-42; Wilson ¶¶ 18-19.

The District Court held that Dr. Connor's refusal to consider these and other factors did not render his opinions inadmissible because "damages in antitrust cases need not be proven with exact certainty." Order, at 10. In so holding, the District Court overlooked that Dr. Connor's analysis was also intended to show the separate requirement of *antitrust impact*. Antitrust impact means that Plaintiffs suffered an injury-in-fact, and that it is an "injury of the type the antitrust laws were intended to prevent *and that flows from that which makes defendants' acts unlawful*." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (emphasis added); *see also Comcast*, 133 S.Ct. at 1433 (when a statistical "model does not even attempt" to link an injury with plaintiffs' theory of impact, it "cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)"). By failing to consider any causal

14

factors other than Defendants' alleged conduct, Dr. Connor is unable to reliably demonstrate antitrust impact with common proof and Plaintiffs, in turn, fail to meet their burden of showing the predominance of common questions.

> **2.    The District Court Failed To Analyze Whether Plaintiffs' Proof of Impact and Damages Was Sufficient to Meet Plaintiffs' Burden Under Rule 23.**

Even if the District Court was correct to admit the Plaintiffs' expert's opinions, the court still committed legal error in not fulfilling its obligation to look beyond admissibility in evaluating whether Plaintiffs had met their burden of proof under Rule 23. Defendants introduced extensive evidence, including expert analysis and uncontested testimony from dairy industry participants, demonstrating that Plaintiffs cannot establish with common proof a causal connection between the challenged conduct and any increase in premiums charged by farmers, or the prices paid by consumers of retail dairy products. *Supra*, at 7-8.

Instead of considering Defendants' evidence and making the necessary factual determinations, the District Court simply assumed that if Plaintiffs' expert's report were admissible, then Defendants' challenges went to the "weight" of that report, and therefore were of no moment for purposes of determining whether to certify the proposed classes. But that was a misstatement of the law, as this Court previously made clear: "[T]o the extent the district court limited its analysis of whether there was commonality to a determination of whether Plaintiffs' evidence

on that point was admissible, it did so in error." *Ellis*, 657 F.3d at 982 (noting the distinction between *Daubert* and "rigorous analysis").[6]

The District Court did not rigorously analyze the conflicting evidence that undercut the validity of Plaintiffs' injury and damages model. In disclaiming any responsibility to do so, the District Court applied an incorrect legal standard and thereby abused its discretion. That was manifest error.

### B. The District Court Failed to Provide Any Analysis, Rigorous or Otherwise, of the Issue of Pass-Through.

Equally important is the District Court's failure even to address the question whether Plaintiffs are able to prove with common evidence that any such overcharge at the farm level was passed on to retail consumers by manufacturers and retailers of dairy products. That is a critical oversight, because the inability to show pass-through with common proof often proves fatal to certification of indirect purchaser classes.[7] Moreover, the passed-through injury in this case is

---

[6] *See also Aburto v. Verizon California, Inc.*, No. CV 11-03683-ODW, 2012 WL 10381, at *2 (C.D. Cal. Jan. 3, 2012) (citing *Ellis* for proposition that in resolving motion for class certification, district courts must consider the "persuasiveness of the evidence presented"); *In re Flash Memory Antitrust Litigation*, No. C 07-0086-SBA, 2011 WL 1301527, at *5 (N.D. Cal. Mar. 31, 2011) (court's rigorous analysis necessarily included evaluating "competing expert reports").

[7] *See, e.g., In re Methionine Antitrust Litig.,* 204 F.R.D. 161, 165 (N.D. Cal. 2001) (denying class certification because of the inadequacy of Dr. Connor's support for a common pass-through rate); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 505-07 (N.D. Cal. 2008) (declining to certify indirect purchaser damages class because "[t]he record show[ed] that the only way to fully assess

16

even more elusive than in the ordinary pass-through case, because Plaintiffs are constrained by the filed-rate doctrine to limit their claims to injuries caused by increases in *premiums*, which are but a small component of the total price of raw milk (approximately 10%). As Dr. Connor admitted, "[g]iven the small share of [premiums] in the retail price, and the multitude of factors driving retail prices, it is not surprising that it is difficult to pick up the relationship between [premiums] and retail prices." Connor Rbtl. ¶ 74 (Dkt. # 268).

Yet "pick[ing] up that relationship" was precisely what Dr. Connor was obliged to do. Instead, his opinions focused on showing that changes in the *total* price of milk were passed on to consumers, *id.* at ¶¶ 72-73, an opinion that is insufficient to show pass-through of *premiums*, the only component of the price that is actionable here. Moreover, the analyses he did submit showed substantial regional variation in pass-through rates, Connor Rpt. ¶¶ 115-16 & Exhibit K (Dkt. # 203), and he conceded that grocery store pricing can be affected by the proximity of certain discount retailers within a few miles, *id.* ¶ 44. Similarly, Defendants' experts analyzed retail pricing data and found significant variations from store to store, and product to product. Kaplan Rpt. ¶¶ 90-102; Hanssens Rpt. ¶¶ 8-53. The

---

pass-through . . . would be to conduct a wholesaler-by-wholesaler and re-seller-by-re-seller investigation"); *In re OSB Antitrust Litig.,* No. 06-826, 2007 WL 2253425, *10-*11 (E.D. Pa. Aug. 30, 2007) (denying certification of indirect purchaser class due to an inability to prove pass-through to retail consumers with common proof).

District Court's failure to address the feasibility of showing pass-through to the retail consumers in the putative classes with common proof was manifest error.

The District Court likewise failed to acknowledge at least two other contested issues of fundamental importance.  First, Dr. Connor's opinion that an overcharge can be shown in each of the class states comes with a caveat:  for both California and Oregon he reported no results and stated only "[a]dditional data to be obtained for merits."  Connor Supp. Rpt. at Exhibit B (Dkt. # 270).[8]  Without data, Plaintiffs could not "affirmatively demonstrate" their ability to show impact or damages with common proof for the putative classes in those states.  *Wal-Mart Stores*, 131 S. Ct. at 2551; *see also In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 28-29 (1st Cir. 2008) (vacating certification order premised on mere speculation that necessary data would be obtained later).

Second, and similarly, all of Dr. Connor's analyses rely upon data for premiums charged on Class I milk (i.e. milk sold as a beverage).  The undisputed record is that Class II milk products (spoonable dairy products, which are six of the seven product categories at issue), are subject to very different pricing structures.  Premiums for Class II products are generally lower, more static, and fewer in kind than premiums on Class I milk.  *See* Wilson ¶ 20; Lichte ¶ 12.  As a result, even if

---

[8] Dr. Connor actually discarded the available data for California and Oregon because it pointed to results inconsistent with his expected findings.  *See* Dkt. # 255-2 (2nd Connor Dep.) at 26:4-16 & 101:18 - 102:9.

Dr. Connor had demonstrated an ability to show an overcharge for Class I milk products with common proof, he made no such showing for the other six products at issue in the case, and at best promised to do so later using unidentified data that may not suit his needs. The premature certification of classes asserting claims over Class II products was manifest error. *Bussey*, 562 Fed. App'x. at 788 (revising class to exclude claims for which relevant data had yet to be acquired); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) (granting interlocutory review, vacating and remanding class certification order due to plaintiffs' failure to demonstrate the workability of their expert's model).

**C.    Review Should Be Granted to Address an Unresolved Issue of Class Action Procedure That Divides Courts in this Circuit.**

Finally, review should be granted to address an important matter of class action procedure that currently divides the courts in this Circuit. In *Ellis*, this Court held that challenges to the admissibility of expert testimony offered in support of class certification should be evaluated under the *Daubert* framework. 657 F.3d at 982. Nevertheless, the District Court here interpreted its Local Rules to prohibit the filing of a separate *Daubert* motion, requiring that all arguments for the exclusion of Dr. Connor be made as part of the opposition to class certification, with no further reply. Order, at 1 n.1. The ruling meant that Plaintiffs' reply brief contained their first, and all parties' final, word on the *Daubert* issue, leaving the parties seeking exclusion no opportunity to address their opponents' arguments.

Among the arguments that went unrebutted due to this procedural anomaly was Plaintiffs' claim to find support for their position in the highly-regarded Hovenkamp treatise, *supra* at 12 n.5. As Defendants set out in their *Daubert* reply, Plaintiffs' quoted language *is not found* in the treatise, and the actual text directly explains the inadequacy of Dr. Connor's method. Dkt. # 228, at 3. But since the Court struck Defendants' filing, Order at 1 n.1, it did not consider that or other reply points.

The District Courts are split on this procedural issue.[9] This Court should grant review to provide much needed guidance on the question whether a party seeking to exclude an expert at the class certification stage has, at the very least, the right to file a brief responding to its opponents' arguments for admissibility.

## CONCLUSION

For the foregoing reasons, the Court should grant permission to appeal.

Respectfully submitted,
WILLIAMS & CONNOLLY LLP


s/ Steven R. Kuney
Steven R. Kuney
Kevin Hardy
Carl R. Metz

---

[9] *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) (ruling on separately filed *Daubert* motion after full briefing); *In re Autozone, Inc. Wage & Hour Emp't Practices Litig.*, 289 F.R.D. 526, 544-45 (N.D. Cal. 2012) (same); *Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2012 WL 3116355 (N.D. Cal. July 31, 2012) (same).

725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
Email: skuney@wc.com
Email: khardy@wc.com
Email: cmetz@wc.com


W. Todd Miller
BAKER & MILLER PLLC
2401 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20037
Tel: (202) 663-7820
Fax: (202) 663-7849
Email: tmiller@bakerandmiller.com


Jesse W. Markham
ATTORNEY AT LAW
2130 Fulton Street
San Francisco, CA 94117
Tel: (415) 422-4473
Fax: (415) 422-6433
Email: jmarkhamlaw@gmail.com

*Counsel for Defendant-Petitioner Dairy Farmers of America, Inc.*


*Pursuant to Ninth Circuit Rule 25-5(f), counsel for Dairy Farmers of America, Inc. attest that the following separately-represented parties join in this Petition and concur in its content:*

21

FARMER BROWNSTEIN JAEGER LLP
William S. Farmer
235 Pine Street, Suite 1300
San Francisco, CA 94014
(415) 962-2875

EIMER STAHL LLP
Nathan P. Eimer
Scott C. Solberg
Daniel D. Birk
224 South Michigan Avenue,
Suite 1100
Chicago, IL 60604
 (312) 660-7600

BOND SCHOENECK & KING, PLLC
Edward R. Conan
One Lincoln Center
Syracuse, NY 13202-1355
 (315) 218-8000

*Counsel for Defendant-Petitioner
Dairylea Cooperative, Inc.*

GIBSON, DUNN & CRUTCHER LLP
George A. Nicoud III
555 Mission Street, Suite 3000
San Francisco, CA 94105-2933
(415) 393-8200

*Counsel for Defendant-Petitioner
Land O'Lakes, Inc.*

STEPTOE & JOHNSON, LLP
Andrew J. Lee
Kenneth P. Ewing
John J. Kavanagh
1330 Connecticut Avenue, NW
Washington, DC  20036
 (202) 429-3000

*Counsel for Defendant-Petitioner
National Milk Producers Federation,
a/k/a Cooperatives Working Together*

SHIPMAN & GOODWIN, LLP
Jill M. O'Toole
One Constitution Plaza
Hartford, CT 06103
(860) 251-5000

*Counsel for Defendant-Petitioner
Agri-Mark, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify on September 30, 2014 the foregoing PETITION FOR PERMISSION TO APPEAL FROM ORDER GRANTING CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(f) AND FRAP 5 was filed electronically. Copies of the foregoing document will be served on all ECF registered counsel by the Court's CM/ECF filing system. I further certify that the foregoing document was served upon counsel for Defendants-Petitioners at the addresses on the preceding page, and upon counsel of record for Plaintiffs-Respondents by electronic mail and first class mail at the following addresses:

Steven N. Berk
BERK LAW PLLC
2002 Massachusetts Avenue, NW
Washington, DC 20036
Email: steven@berklawdc.com

Elaine T. Byszewski
HAGENS BERMAN SOBOL
  SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Email: elaine@hbsslaw.com

Jason Kilene
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Email: jkilene@gustafsongluek.com

Steve W. Berman
HAGENS BERMAN SOBOL
  SHAPIRO LLP
1918 Eighth Avenue
Suite 3300
Seattle, WA 98101
Email: steve@hbsslaw.com

Jeff D Friedman
HAGENS BERMAN SOBOL
  SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Email: jefff@hbsslaw.com

*Attorneys for Plaintiffs-Respondents*

By: s/ Steven R. Kuney
    Steven R. Kuney

# APPENDIX:

Order Granting Motion for Class Certification (Sept. 16, 2014)

United States District Court
For the Northern District of California

1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  MATTHEW EDWARDS, et al.,

10          Plaintiffs,                              No. C 11-04766 JSW

11  v.

12  NATIONAL MILK PRODUCERS
   FEDERATION, aka COOPERATIVES          **ORDER REGARDING MOTION**
13  WORKING TOGETHER, et al.,             **FOR CLASS CERTIFICATION**

14          Defendants.
   _____/

15

16          Now before the Court is the motion for class certification filed by Plaintiffs, the *Daubert*

17  motion to exclude Plaintiffs' expert filed by Defendants, and the motion to strike the *Daubert*

18  motion filed by Plaintiffs.  Having considered the parties' pleadings and relevant legal

19  authority, the Court hereby grants in part and denies in part the motion for class certification,

20  denies the request to exclude Plaintiffs' expert, and grants the motion to strike Defendants'

21  separate evidentiary objections.[1]

22                              **BACKGROUND**

23          Plaintiff filed this putative antitrust class action against Defendants National Milk

24  Producers Federation, aka Cooperatives Working Together ("CWT"), Dairy Farmers of

25  America, Inc., Land O'Lakes, Inc., Dairylea Cooperative Inc., and Agri-Mark, Inc. (collectively

26

27          [1] Defendants brought a separate motion to exclude Plaintiffs' expert in violation of
   the Northern District Local Civil Rule 7-3(a).  Therefore, the Court STRIKES their separate
28  motion.  Nevertheless, because Defendants included their basis for excluding Plaintiffs'
   expert in their opposition to the motion for class certification, the Court will address their
   arguments to exclude Plaintiffs' expert.  The Court FURTHER DENIES Defendants' motion
   to file a sur-reply to Plaintiffs' supplemental brief.

United States District Court
For the Northern District of California

"Defendants") on behalf of all consumers who indirectly purchased milk and/or other fresh milk products for their own use from 2003 to the present as residents of the fifteen states at issue and of Washington, D.C. In addition to Washington, D.C., Plaintiffs contend that Defendants violated the state antitrust laws of the following fifteen states: Arizona, California, Kansas, Massachusetts, Michigan, Missouri, Nebraska, Nevada, New Hampshire, Oregon, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

Plaintiffs allege that CWT and its members have engaged in a nationwide conspiracy to limit the production of raw farm milk, and thus increase the price of raw milk, through premature "herd retirements." (Second Amend. Consolidated Class Action Compl. ("SACCAC"), ¶ 1.) "These herd retirements required participating dairy farmers to destroy all of the dairy cows in all of their herds and, beginning on April 1, 2009, agree not to reenter the dairy farming business for at least one year." *Id.* Plaintiffs allege that this conspiracy artificially inflated, and continues to artificially inflate, the price of milk and other fresh milk products, including cream, half & half, yogurt, cottage cheese, cream cheese, and sour cream. *Id.*

Plaintiff now seeks class certification in each of the fifteen states, plus Washington, D.C., pursuant to Federal Rule of Civil Procedure 23 for the following classes:

> All consumers who, from 2003 to the present, as residents of
> [State], indirectly purchased milk and/or other fresh milk products
> (including cream, half & half, yogurt, cottage cheese, cream cheese,
> and/or sour cream) for their own use and not for resale.

(*Id.* at ¶ 126.)

The United States Department of Agriculture ("USDA") issues Farm Milk Marketing Orders ("FMMO") which set the minimum price which may be charged for raw milk. *See Carlin v. DairyAmerica, Inc.*, 688 F.3d 1117, 1120 (9th Cir. 2012). The rates set by FMMOs "consist of only *minimum* prices" from which the prices charged may be increased. *Id.* at 1130 (emphasis in original). The AMAA does not mandate a maximum price. Parties "can and do, negotiate premiums, known as 'over-order' prices, for the sale of milk." *Id.* at 1120 (quoting

2

United States District Court

For the Northern District of California

*Farmers Union Milk Mktg Coop. v. Yeutter*, 930 F.2d 466, 468-69 (6th Cir. 1991)). Plaintiffs contend that Defendants artificially raised the over-order prices for raw milk.

Defendants do not dispute that they engaged in herd retirement. Rather, they contend that their conduct is immune from antitrust liability pursuant to Section 2 of the Capper-Volstead Act, 7 U.S.C. § 292. The Capper-Volstead Act, in conjunction with Section 6 of the Clayton Act, 15 U.S.C. § 17, provides an exemption from liability under section 1 of the Sherman Act, 15 U.S.C. § 1. Whether Defendants' conduct is in fact immune is a merits argument that Defendants do not raise, and the Court does not address, upon the present motions.

**ANALYSIS**

Before the Court turns to the motion for class certification, the Court addresses Defendants' challenge to Plaintiffs' expert, Dr. John M. Connor, based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise if," *inter alia*, "the testimony is the product of reliable principles and methods." Fed. R. Evid. 702.

It is well established that a court has a "gatekeeping function" to determine that proposed expert testimony, whether it is based on scientific, technical or other "specialized knowledge," is both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Daubert*, 509 U.S. at 597; *Estate of Barbarin v. Ashten-Johnson, Inc.*, – F.3d –, 2014 WL 129884, at *4 (9th Cir. Jan. 15, 2014). This inquiry is a "flexible" one, and the Court may consider such factors as whether the specialized knowledge or scientific or technical theory or technique: (1) can be or has been tested; (2) has been subjected to peer review or publication; (3) is subject to generally applicable standards or known error rates; and (4) is "generally accepted" in the field of expertise. *Kumho*, 526 U.S. at 151; *Daubert*, 509 U.S. at 592-94; *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000.)

Although the Court may exclude expert testimony, that is not always the appropriate remedy. "Vigorous cross-examination, presentation of contrary evidence, and careful

United States District Court

For the Northern District of California

1  instruction on the burden of proof are the traditional and appropriate means of attacking shaky

2  but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas,* 483 U.S. 44, 61

3  (1987)).  Upon review of the record, the Court cannot say that Dr. Connor's opinions are so

4  inherently unreliable that his testimony should be excluded, and, thus, the Court denies the

5  request to exclude him.

6       "Class certifications are governed by Federal Rule of Civil Procedure 23," and a

7  plaintiff seeking class certification bears the burden of "demonstrating that he has met each of

8  the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)."  *Lozano*

9  *v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007); *see also Zinser v. Accufix*

10  *Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended* 273 F.3d 1266 (9th Cir. 2001)

11  (trial court must conduct a "rigorous analysis" to determine whether the requirements of Rule

12  23 have been met).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class

13  certification must affirmatively deonstrate his compliance with the Rule – that is, he must be

14  prepared to prove that there are in fact sufficiently numerous parties, common questions of law

15  or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Further, "[c]lass

16  certification is not immutable, and class representative status could be withdrawn or modified if

17  at any time the representatives could no longer protect the interests of the class."  *Cummings v.*

18  *Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of*

19  *Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

20      **A.**    **Threshold Issues: Ascertainability and Standing.**

21       As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

22  seeking class certification must demonstrate that an identifiable and ascertainable class exists.

23  *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  "'Although there is no explicit

24  requirement concerning the class definition in Fed. R. Civ. P. 23, courts have held that the class

25  must be adequately defined and clearly ascertainable before a class action may proceed.'"

26  *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliott v ITT*

27  *Corp*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992)).  "A class definition should be 'precise,

28  objective and presently ascertainable.'"  *Rodriguez v. Gates,* 2002 WL 1162675, at *8 (C.D.

United States District Court

For the Northern District of California

Cal. 2002) (quoting *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)); *see also* Manual for Complex Litigation, Fourth § 21.222 at 270-71 (2004). While the identity of the class members need not be known at the time of certification, class membership must be clearly ascertainable. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member. *See, e.g., Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo. 1995).

"A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Vietnam Veterans of America v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (citation omitted); *see also Yordi v. Plimus, Inc.*, 2013 WL 5832225, *2 (N.D. Cal. Oct. 29,. 2013); *Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, *9 (N.D. Cal. Jan. 15, 2010). Here, the class definition clearly defines the characteristics of a class member by providing a description of the allegedly offending products and the eligible dates of purchase. Therefore, a prospective class member would have sufficient information to determine whether he or she was an indirect purchaser of milk and/or other fresh milk products during the class period. Accordingly, the Court finds that Plaintiffs have set forth identifiable and ascertainable classes.

Standing is another threshold issue. To demonstrate standing "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (internal quotes omitted). Moreover, at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."); *see also In re Ditropan XL Antitrust Litigation*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007); *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d

5

United States District Court
For the Northern District of California

1365, 1370-71 (S.D.Fla. 2001) (dismissing based for lack of standing the state law antitrust claims in which none of the named plaintiffs resided or purchased the drug at issue).

Plaintiffs bear the burden of demonstrating standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Defendants argue that Plaintiffs fail to demonstrate standing for the class from West Virginia because there is no plaintiff from that state. Plaintiffs do not contest this argument. Therefore, they have not met their burden to show standing to represent a class from West Virginia. Accordingly, the Court denies the motion for class certification with respect to the class from West Virginia.

**B.      Rule 23(a) Requirements.**

Class certification is appropriate only if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As noted above, the Supreme Court has made clear that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores*, 131 S. Ct. at 2551. The class can be certified only if the court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982).

The Supreme Court has noted that "[f]requently . . . 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart*, 131 S. Ct. at 2551. "The district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citing *Wal-Mart*, 131 S. Ct. at 2552 n.6 (clarifying that Rule 23 does not authorize a preliminary inquiry into the merits of the

United States District Court

For the Northern District of California

1   suit for purposes other than determining whether certification was proper)).  "To hold otherwise

2   would turn class certification into a mini-trial."  *Ellis*, 657 at 983 n.8.

### 1.      Numerosity.

4        In order to meet their burden on Rule 23(a)'s "numerosity" requirement, Plaintiff must

5   demonstrate that the proposed class is "so numerous that joinder of all members is

6   impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

7   1019 (9th Cir. 1998).  Although "[t]here is no absolute minimum number of plaintiffs necessary

8   to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] . . .

9   [j]oinder has been deemed impracticable in cases involving as few as 25 class members. . . ."

10  *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 628-29 (N.D. Cal. 2005) (internal

11  citations omitted) (finding joinder was impractical where there were over 236 members in the

12  putative class).  As another court in this district has recognized "a survey of representative cases

13  indicates that, generally speaking, classes consisting of more than 75 members usually satisfy

14  the numerosity requirement of Rule 23(a)(1)."  *Id.* (citing 7A Wright, Miller & Kane *Federal*

15  *Practice and Procedure:* Civil 3d § 1762 (2005)).  In this case, Plaintiffs present evidence that

16  there are approximately 46 million class members.  The Court finds that Plaintiffs have met

17  their burden to show that the class is sufficiently numerous.

### 2.      Commonality, Typicality, Superiority, and Predominance.

19       Commonality requires that there be "questions of fact and law which are common to the

20  class."  Fed. R. Civ. P. 23(a)(2).  "The commonality requirement serves chiefly two purposes:

21  (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring

22  practical and efficient case management."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir.

23  2010) (internal quotation marks omitted).  Courts look for "shared legal issues or a common

24  core of facts."  *Id.*  Where diverging facts underlie the individual claims of class members,

25  courts consider whether the issues "at the heart" of those claims are common such that the class

26  vehicle would "facilitate development of a uniform framework for analyzing" each class

27  member's situation.  *Id.* at 1123.  The class claims "must depend on a common contention,"

28  which "must be of such a nature that it is capable of classwide resolution – which means that

United States District Court

For the Northern District of California

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. The commonality requirement has been construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As with the commonality requirement, the typicality requirement is applied permissively. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)). Defendants do not contest that Plaintiffs have demonstrated typicality.

In order to certify a class under Rule 23(b)(3), Plaintiff must establish that "common questions . . . 'predominate over any questions affecting only individual members,'" and also must establish that class resolution is "'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The focus is "on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for

1    handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d

2    at 1022.

3           A plaintiff can satisfy the superiority requirement when he or she can show that "class-

4    wide litigation of common issues will reduce litigation costs and promote greater efficiency."

5    *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  In order to make this

6    determination, the Court should consider the following factors: "the interest of members of the

7    class in individually controlling the prosecution or defense of separate actions; the extent and

8    nature of any litigation concerning the controversy already commenced by or against members

9    of the class; the desirability or undesirability of concentrating the litigation of the claims in the

10   particular forum; the difficulties likely to be encountered in the management of a class action."

11   Fed. R. Civ. P. 23(b)(3)(A)-(D).

12          Here, there is a key common question – whether Defendants violated the indirect

13   purchaser antitrust laws from the class states.  Defendants argue that there is no common

14   question because the existence of the herd reduction program is undisputed.  However,

15   Defendants do dispute liability.  Accordingly, a key common legal question remains.  *See Wal-*

16   *Mart*, 131 S. Ct. at 2551 (holding that "[e]ven a single [common] question will do," so long as

17   that question has the capacity to generate a common answer "apt to drive the resolution of the

18   litigation.") (internal quotation marks omitted).

19          Defendants also challenge Plaintiffs' ability to demonstrate that damages can be shown

20   by a reliable method using common proof.  At the class certification stage, the Court must

21   determine whether Plaintiffs have shown "that there is a reasonable method for determining, on

22   a classwide basis, the antitrust impact's effects on the class members."  *In re Cathode Ray Tube*

23   *(CRT) Antitrust Litig.*, 2013 WL 5391159, *5 (N.D. Cal. Sept. 24, 2013); *see also In re*

24   *Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013) ("Whether plaintiff will

25   ultimately prevail in proving damages is not necessary to determine at this stage.  Instead, the

26   question for class certification is whether plaintiff has met its burden of establishing that

27   damages can be proven on a classwide basis."); *Chavez v. Blue Sky Natural Beverage Co.*, 268

28   F.R.D. 365, 379 (N.D. Cal. 2010) ("At class certification, plaintiff must present a likely method

United States District Court
For the Northern District of California

1   for determining class damages, though it is not necessary to show that his method will work

2   with certainty at this time.") (internal quotation marks and citation omitted). "This is a question

3   of methodology, not merit." *In re CRT Antitrust Litig.*, 2013 WL 5391159, at *5 (citing *In re*

4   *Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, *9 (N.D. Cal.

5   June 5, 2006)).

6        Moreover, damages in antitrust cases need not be proven with exact certainty. *See*

7   *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013) ("Calculations need not be exact . . .");

8   *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969) ("[D]amages issues in

9   [antitrust] cases are rarely susceptible of the kind of concrete, detailed proof of injury which is

10  available in other contexts."); *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566

11  (1981) (expressing "willingness to accept a degree of uncertainty" in antitrust damage proof

12  given that "[t]he vagaries of the marketplace usually deny us sure knowledge of what plaintiff's

13  situation would have been in the absence of the defendant's antitrust violation"); *Knutson v.*

14  *Daily Review, Inc.*, 548 F.2d 795, 811 (9th Cir.1976) (proof of damages is sufficient "if the

15  evidence show[s] the extent of the damages as a matter of just and reasonable inference,

16  although the result be only approximate") (citation omitted); *Moore v. James H. Matthews &*

17  *Co.*, 682 F.2d 830, 836 (9th Cir.1982) ("[A]n antitrust plaintiff is only obligated to provide the

18  trier-of-fact with some basis from which to estimate reasonably, and without undue speculation,

19  the damages flowing from the antitrust violations.") (citation omitted).

20       Upon a rigorous analysis, the Court finds that Plaintiffs have met their burden to

21  demonstrate damages from Defendants' alleged unlawful conduct may be calculated on a class-

22  wide basis. Defendants contend that Plaintiffs' expert failed to consider important relevant

23  factors. However, while the omission of variables from analysis "may render the analysis less

24  probative than it otherwise might be, it can hardly be said, absent some other infirmity, that an

25  analysis which accounts for the major factors must be considered unacceptable as evidence."

26  *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (internal quotation marks and citations omitted).

27  "In some cases , . . . the analysis may be 'so incomplete as to be inadmissible as irrelevant.'"

28  *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) (quoting *Bazemore,* 478 U.S.

United States District Court
For the Northern District of California

1    at 400 n. 10).  Upon review of the evidence and Defendants' arguments regarding Dr. Connor's

2    expert reports, the Court finds that any failure to consider relevant factors goes to the weight of

3    the evidence, as opposed to admissibility.

4         *Comcast* holds that "plaintiffs must be able to show that their damages stemmed from

5    the defendant's actions that created the legal liability" *Leyva v. Medline Industries Inc.*, 716

6    F.3d 510, 514 (9th Cir. 2013) (citing *Comcast*, 133 S.Ct. at 1435.)  The Court had been

7    concerned that Plaintiffs did not demonstrate an ability to prove damages that were linked to

8    their theory of liability.  In their supplemental briefing, Plaintiffs clarified that although they are

9    moving under state law, their theory is that Defendants engaged in a nationwide conspiracy.

10   Moreover, they have demonstrated that, under the laws of the states in which they are moving,

11   recovery from a nationwide antitrust conspiracy is allowed, so long as the effects are felt within

12   the state. *See e.g.*, *RLH Indus., Inc. v. SBC Communications, Inc.*, 133 Cal. App. 4th 1277,

13   1281-82 (2005) ("the commerce clause does not bar application of California antitrust law to

14   out-of-state anticompetitive conduct that causes injury in California.").  Plaintiffs' expert set

15   forth a damages model that is capable of calculating the allegedly inflated prices that class

16   members paid in each class state as a result of the nationwide conspiracy.

17        Defendants argue that the Commerce Clause prohibits Plaintiffs from seeking antitrust

18   damages for conduct that occurs in non-class action states.  However, state indirect purchaser

19   statutes are not preempted by federal antitrust laws.  *California v. ARC America Corp.*, 490 U.S.

20   93, 101 (1989).  State laws allowing indirect purchaser lawsuits "are consistent with the broad

21   purposes of the federal antitrust laws: deterring anticompetitive conduct and ensuring the

22   compensation of victims of that conduct." *Id.* at 102; *see also Knevelbaard Dairies v. Kraft

23   Foods, Inc.*, 232 F.3d 979, 993-94 (9th Cir. 2000) (holding that California's application of its

24   antitrust law to conduct that occurred in Wisconsin as well as California did not violate the

25   Commerce Clause).  Moreover, "[w]here Congress has proscribed certain interstate commerce,

26   Congress has determined that commerce is not in the national interest." *Pic-A-State PA, Inc. v.

27   Commonwealth of Pennsylvania*, 42 F.3d 175, 179 (9th Cir. 1994).  If Congress has done so, "it

28   does not offend the purpose of the Commerce Clause for states to discriminate or burden that

commerce." *Id.* Here, Plaintiffs contend that Defendants' conduct violates the Sherman Act and is not immune under the Capper-Volstead Act. Their state-law indirect purchaser claims are consistent with the Sherman Act and therefore do not violate the Commerce Clause.

Therefore, the Court finds that Plaintiffs have demonstrated that common legal questions predominate over individualized issues and that a class action would be a superior method for resolving this litigation. Members of the proposed class likely do not possess an interest in individually controlling the prosecution of separate actions as the cost of maintaining a separate action would be prohibitive. *See, e.g., Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008).

### 3. Adequacy of Representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. In order to determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957; *see also Fendler v. Westgate California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel also must have sufficient "zeal and competence" to protect the interests of the class). "'[T]he adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative.'" *Rodriguez v. West Publishing Co.*, 563 F.3d 948, 961 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) (brackets added in *West*)).

The Court concludes, based on the current record as presented, that Plaintiffs are adequate class representatives and that Plaintiffs' counsel will vigorously prosecute this action on behalf of the class.

United States District Court

For the Northern District of California

**CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for class certification. The Court DENIES Plaintiffs' motion with respect to the class action from West Virginia based on lack of standing, but GRANTS the remainder of Plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

Dated: September 16, 2014



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California